Ms. Cathyrn Hinshaw Executive Director Arkansas Fire and Police Pension Review Board P.O. Drawer 34164 Little Rock, AR 72203
Dear Ms. Hinshaw:
You have presented the following questions for my opinion:
 (1) May a fire fighter or police officer who has completed the Deferred Retirement Option Plan (DROP) period but has not received a DROP distribution return to work?
 (2) May a fire fighter or police officer who has completed the DROP period and has received a DROP distribution return to work?
RESPONSE
Question 1 — May a fire fighter or police officer who has completed theDROP period but has not received a DROP distribution return to work?
It is my opinion that a fire fighter or police officer who has completed the DROP period, pursuant to the statutory provisions governing DROP programs for police and fire fighters (A.C.A. § 24-11-434 and A.C.A. §24-11-830) may not return to work, regardless of whether he or she has received a DROP distribution.
I base this conclusion on a decision of the Arkansas Supreme Court addressing this issue in part. In Jackson v. Blytheville Civ. Serv.Com., 345 Ark. 56, 43 S.W.3d 748 (2001), the court held that a city civil service commission could not rehire its fire chief after the chief had completed the period of DROP service. The court's decision turned largely on its interpretation of the language of A.C.A. § 24-11-830(c)(2) (which governs fire fighters' DROP programs). That statute states:
 At the conclusion of a member's participation in the Arkansas Fire Fighters' Deferred Retirement Option Plan, the member shall terminate employment with all participating municipalities as a fire fighter and shall start receiving the member's accrued monthly retirement benefit from the firemen's pension and relief fund.
A.C.A. § 24-11-830(c)(2) (emphasis added).
The fire chief in question in Blytheville argued that the above-quoted statute did not address the question of returning to work, and that in fact, fire fighters are expressly authorized by the provisions of A.C.A. § 24-11-827 to return to work after retirement. The court rejected this argument, stating:
 To our way of thinking, the issues in this case turn in large part on what the DROP statute means when it says "the members shall terminate employment with all participating municipalities." The widely recognized definition of" terminate" is "to bring to an end." See, e.g., Merriam-Webster's Collegiate Dictionary, p. 1216 (10th ed. 1997). Rehiring a fire fighter after the statute mandates that he end his employment with the City and commence receiving retirement benefits runs directly counter to the express intent of the DROP statute. In short, rehiring as was done in the instant case does not bring an end to employment but does exactly the opposite.
Id. at 62. Accord, Op. Att'y Gen. No. 2001-064. The court also concluded that the authorization in A.C.A. § 24-11-827 to return to work after retirement does not apply to DROP participants, but rather only to retirees who do not participate in DROP. Accord, Op. Att'y Gen. No.99-078.
The court's interpretation of A.C.A. § 24-11-830(c)(2) would also apply to the provisions of A.C.A. § 24-11-434(c) (which governs police DROP programs). That statute states:
 (c) At the conclusion of a member's participation in the Arkansas Police Officers' Deferred Option Plan, the member shall terminate employment with all participating municipalities as a police officer and shall start receiving the member's accrued monthly retirement benefit from the policemen's pension and relief fund.
A.C.A. § 24-11-434(c).
It is my opinion that the court's reasoning in Blytheville mandates the same conclusion regardless of whether the individual has received a distribution from the DROP program. First, the language of both of the applicable statutes is unambiguous in requiring participants in the DROP program to terminate employment with all participating municipalities at the conclusion of the DROP period. Both statutes use the mandatory term "shall." Marcum v. Wengert, 344 Ark. 153, 40 S.W.3d 230 (2001) (the word "shall" in a statute indicates mandatory compliance with statute's terms). Moreover, under the language of both statutes, such termination is to take place before the participant receives any benefits from the program. Therefore, the fact that a participant has not yet received a distribution from the DROP program does not affect the requirement to terminate employment, as the concept of termination was interpreted by the Arkansas Supreme Court in Blytheville. That is, the court's reasoning would apply even if the individual had not yet received a distribution from the DROP program.
The statutes discussed above do not address the question of whether a DROP participant who has completed the DROP period may return to work as a non-paid volunteer. I have previously opined that the DROP statutes do not prohibit DROP participants from remaining involved in their former departments as volunteers, provided that they do not receive compensation for doing so. Op. Att'y Gen. No. 2001-064. Involvement as a non-paid volunteer is expressly authorized for fire fighters, see A.C.A. §24-11-818, and does not appear to be prohibited for police officers.
Question 2 — May a fire fighter or police officer who has completed theDROP period and has received a DROP distribution return to work?
No. However, this conclusion does not turn on the fact that the individual has received a DROP distribution. See response to Question 1.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General